<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| PHILLIP WOOD, | Civil Action No. 13-2453 (FLW) |
| Plaintiff, | |
| v. | **OPINION** |
| ELIZABETH HOGAN, et al., | |
| Defendants. | |

**APPEARANCES**:

> PHILLIP WOOD, #15067
> Ann Klein Forensic Center
> P.O. Box 7717
> West Trenton, New Jersey   08628
> Plaintiff *Pro Se*

<u>**WOLFSON, District Judge**</u>:

Phillip Wood, who is civilly committed to the Ann Klein Forensic Center in New Jersey,

seeks to file a Complaint without prepayment of the filing fee, asserting claims under 42 U.S.C. §

1983 against 17 officials at Ann Klein Forensic Center.   This Court will grant Wood's application

to proceed *in forma pauperis* and, as required by 28 U.S.C. § 1915(e)(2)(B), dismiss the Complaint

for failure to state a claim upon which relief may be granted.

## I.   BACKGROUND

Over 30 years ago, when he was 19 years old, Wood set fire to the family home while his

family was inside sleeping.   *See Wood v. Main,* 789 F.Supp.2d 519 (D.N.J. 2011), *certificate of*

*appealability denied,* C.A. 11-2684 (3d Cir. Sept. 22, 2011), *cert. denied,* 132 S.Ct. 1100 (2012);

*In re Commitment of Phillip A. Wood,* 2007 WL 4356135 (N.J. Super. Ct., App. Div., Dec. 12,

2007), *certif. denied,* 194 N.J. 444 (2008) (table).[1]   All family members escaped by jumping from second floor windows, except his two-month old nephew, who died in the fire.   In 1981, Wood was found not guilty by reason of insanity ("NGI") of felony murder and aggravated arson in the Superior Court of New Jersey, Burlington County.   He was involuntarily committed to a state hospital as an NGI acquittee, pursuant to N.J. STAT. ANN. § 2C:8b(3), and received periodic review hearings, in accordance with *State v. Krol,* 68 N.J. 236 (1975).[2]

---

[1]  This Court takes judicial notice of prior proceedings brought by or against Wood.   Courts may take judicial notice of a fact that is not subject to reasonable dispute in that it is "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."   Fed. R. Evid. 201(b)(2).   *See also Leggett v. Bates,* 533 F.App'x 57, 58 n.2 (3d Cir. 2013 ) ("[A] court may take judicial notice of its own records in other cases.") (citation omitted); *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009) ("[A] court may take judicial notice of a prior judicial opinion.").

[2]  "When a person accused of a crime is acquitted by reason of insanity, the accused may be held in continued confinement if the person is a danger to self or others and is in need of medical treatment.   We describe such person as being on *Krol* status."   *In re Commitment of W.K.,* 159 N.J. 1, 2 (1999) (citing *Krol,* 68 N.J. 236).   Under New Jersey law, a defendant who is committed after an NGI finding is reviewed on a periodic basis under the same standards as those applied to civil commitments, except that the burden for establishing the need for continued NGI commitment is by a preponderance of the evidence, whereas the burden in a regular civil commitment proceeding is clear and convincing evidence.   *See Wood,* 789 F.Supp.2d at 524 n.5; *In re Commitment of M.M.*, 377 N.J. Super. 71, 76-77 (App. Div. 2005).   The lesser burden of proof continues during the maximum period for which imprisonment could have been imposed as an ordinary term of imprisonment for the charges on which the defendant has been acquitted by reason of insanity, after giving credit for all time spent in confinement for the charges.   *Id.*   Because the continued involuntary commitment of an NGI defendant is based upon the court's determination of whether the state has demonstrated that the defendant continues to be a danger to himself or others, New Jersey law allows the person to be released prior to the maximum term if the court finds that the NGI defendant is no longer a danger to herself or others.   *Id.*   However, after expiration of the maximum term, the state's burden of showing a continuing need for civil commitment rises from the preponderance of the evidence standard under *Krol* and N.J. STAT. ANN. § 2C:4-8b(3) to the clear and convincing evidence standard set forth in N.J. STAT. ANN. § 30:4-27.15(a).   See *Wood,* 789 F.Supp.2d at 524 n.5; *In re Commitment of W.K.*, 159 N.J. 1, 4 (1999); *Commitment of M.M.*, 377 N.J. Super. at 77 n.3.

By order filed March 31, 2010, the New Jersey Superior Court terminated Wood's NGI *Krol* status, effective April 18, 2010, and ordered Ann Klein Forensic Center to immediately evaluate him to determine whether or not he should be committed pursuant to the New Jersey Civil Commitment Law, N.J. Stat. Ann. § 30:4-27.1 *et seq.*   A hearing was conducted, and Wood was civilly committed effective April 18, 2010, pursuant to N.J. Stat. Ann. § 30:4-27.15 (a), which provides that "[i]f the court finds by clear and convincing evidence that the patient needs continued involuntary commitment to treatment, it shall issue an order authorizing the involuntary commitment of the patient and the assignment or admission of the patient . . ."

Prior to the expiration of his 30-year *Krol* term, Wood's *Krol* hearings were suspended by court order during the time he served two separate terms of criminal incarceration.  *See Wood,* 789 F.Supp.2d at 521-23; *In re Commitment of Wood,* 2007 WL 4356135 at *1.   On May 3, 2000, Wood was sentenced to a three-year term of imprisonment, based on his guilty plea to aggravated assault on a psychiatrist, and on March 5, 2007, Wood was sentenced to a four-year term of incarceration based on his guilty plea to third-degree assault.   A state court order dated July 21, 2000, suspended *Krol* hearings for Wood during the time he was in the custody of the New Jersey Department of Corrections, but provided that 90 days prior to his release date, the court would schedule a *Krol* hearing.[3]   *Id.*   Wood's *Krol* hearings were suspended, pursuant to the July 21, 2000, order, during the time he served these terms; prior to the expiration of each term of incarceration, the state court conducted a *Krol* hearing, determined that Wood posed a danger to himself, others, and property, if released to the community, and reinstated his *Krol* commitment.

---

[3]  The state court order issued prior to Wood's release from his first term of criminal incarceration, which order was dated October 18, 2002, established a maximum limit of *Krol* supervision of 30 years, remanded Wood to Ancora Psychiatric Hospital for a psychiatric evaluation, vacated the suspension of *Krol* hearings, and established a *Krol* hearing for December 6, 2002.  *See Wood,* 789 F.Supp.2d at 521-23; *In re Wood,* 2007 WL 4356135 at *1.

Wood appealed the orders suspending and reinstating his *Krol* hearings to the Appellate Division of the Superior Court of New Jersey, arguing that the suspension and reinstatement of his hearings violated due process. *See In re Wood,* 2007 WL 4356135 at *1. On December 12, 2007, the Appellate Division affirmed in an unpublished opinion. *Id.* The Appellate Division noted that, although state law required "periodic reviews of the [NGI] commitment no later than (1) three months from the date of the first hearing, and (2) nine months from the date of the first hearing, and (3) 12 months from the date of the first hearing, and (4) at least annually thereafter, if the patient is not sooner discharged," *id.* (citing N.J. Ct. R. 4:74-7(f)(2)), the Law Division's orders had properly relaxed this rule. *Id.* at *3. "If Wood had been afforded a *Krol* hearing while imprisoned, he would not have been released, even if it were determined he was no longer a danger to self or others." *Id.* The Appellate Division found that, because there was no purpose to be accomplished by a *Krol* review while Wood was incarcerated, a relaxation of R. 4:74-7 was appropriate, did not violate Wood's constitutional rights, and was in accordance with his consent. *Id.* The Appellate Division also rejected Wood's argument that his transfer to prison for service of the new criminal sentence necessitated termination of his *Krol* status because he was no longer mentally ill. *Id.* On March 12, 2008, the New Jersey Supreme Court denied Wood's petition for certification. *See In re Wood,* 194 N.J. 444 (2008) (table).

Wood has filed 31 actions in this Court, including habeas corpus petitions and civil rights complaints. Of particular interest, on September 5, 2008, while he was serving his second term of incarceration, Wood filed his first § 2254 petition challenging the orders suspending and reinstating his *Krol* hearings. *See Wood v. New Jersey*, Civ. No. 08-4515 (JBS) opinion (D.N.J. Feb. 20, 2009). On February 20, 2009, this first petition was dismissed for lack of subject matter

jurisdiction because, at the time he filed it, Wood was incarcerated at the New Jersey State Prison serving the four-year sentence imposed on March 5, 2007, and he was not "in custody" on the orders challenged in the petition.   On April 1, 2010 (17 days before Wood's NGI commitment expired), Wood filed a second § 2254 petition challenging the orders suspending and reinstating his *Krol* hearings on due process grounds.   *See Wood,* 789 F.Supp.2d 519.   On June 6, 2011, this second § 2254 petition was dismissed as moot and, alternatively, on the merits.   The court found that the due process claims raised in the petition became moot when New Jersey terminated Wood's NGI *Krol* status on April 18, 2010, and then civilly committed him under the clear and convincing evidence standard applicable to civil committments under N.J. STAT. ANN. 30:4-27.15(a) because there was no injury-in-fact attributable to Wood's previous commitment on NGI *Krol* status under the preponderance of the evidence standard that could be remedied by a favorable decision on his habeas petition.[4]   Alternatively, the court found that Wood was not entitled to habeas relief on the merits of his due process claims because the adjudication of these claims by the Appellate Division was not an unreasonable application of Supreme Court jurisprudence.   *See Wood,* 789 F.Supp.2d at 532.

---

[4] The court reasoned:

> [O]n a practical level, Petitioner was recently civilly committed under the clear and convincing evidentiary standard . . . .   Thus, even if the Court found that New Jersey erroneously employed the preponderance of the evidence standard to commit him at the expiration of his penal sentence, there is no relief to be had by Petitioner.   A favorable ruling by the Court would result in an order directing respondents to release Petitioner unless they commit him under the clear and convincing evidence standard.   And that is exactly what happened when Petitioner's *Krol* status expired on April 18, 2010 – Petitioner has already been committed under the clear and convincing evidentiary standard in accordance with N.J. STAT. ANN. § 30:4-27.15(a).

*Wood,* 789 F.Supp.2d at 526.

In the Complaint presently before this Court, Wood raises three due process claims.   In Count One, he claims that he was wrongfully committed in violation of due process after the expiration of his prison terms by the July 21, 2000, and October 18, 2002, orders of the Law Division.   (Complaint, Count One, ECF No. 1 at 20.)   Wood asserts that, "although he remains confined under civil commitment as the result of the invalid *Krol* orders of July 21, 2000, and October 18, 2002, that are constitutionally defective, he has no remedy available because the federal court has also determined that the court lacks jurisdiction because he is no longer under *Krol* status as well."   (ECF No. 1 at 16.)   In Count Two, Wood claims that "defendants . . . denied plaintiff the ability to access adequate treatment programs or any form of treatment, and deliberately and willfully den[ied] him adequate treatment which resulted in a form of punishment rather than adequate treatment . . . in violation of the Due Process Clause of the Fourteenth Amendment."   (ECF No. 1 at 21.)   In Count Three, Wood claims that defendants violated his liberty interest, created by N.J. STAT. ANN. § 30:4-24.2(e)(2) and (d)(3), to the "'least restrictive setting' by not providing plaintiff with any treatment programs; or providing a way so that plaintiff could have access to adequate assigned treatment programs, and by having him isolated, secluded, and confined at AKFC."   (ECF No. 1 at 21.)   For violation of his constitutional rights, Wood seeks declaratory relief, an injunction enjoining "defendants from violating plaintiff's due process rights," and compensatory and punitive damages.   (ECF No. 1 at 23.)

## II.   STANDARD OF REVIEW

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis* and to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a

defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B).  This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because this Court is granting Plaintiff permission to proceed *in forma pauperis*.

"[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive *sua sponte* screening for failure to state a claim[5], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

## III.  DISCUSSION

A.   Federal Jurisdiction

Section 1983 of Title 42 of the United States Code provides a cause of action for violation of constitutional rights by a person acting under color of state law.[6]   To recover under § 1983, a plaintiff

---

[5] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F.App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F.App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)).

[6] The statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be

must show two elements:   (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).   "The first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to [then] determine whether the plaintiff has alleged a deprivation of a constitutional right at all."   *Morrow v. Balaski,* 719 F.3d 160, 166 (3d Cir. 2013) (citation and internal quotation marks omitted).   This Court construes the Complaint as raising procedural and substantive due process claims with regard to Wood's civil commitment proceedings and his treatment during his commitment.

The Due Process Clause provides that a state may not "deprive any person of life, liberty, or property, without due process of law."   U.S. Const., amend. 14.   "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful governmental actions regardless of the fairness of the procedures used to implement them."   *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992). "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."   *County of Sacramento v. Lewis,* 532 U.S. 833, 847 n.8 (1998).   Conduct which shocks the conscience "encompasses only the most egregious conduct," *Newman v. Beard,* 617 F.3d 775, 782 (3d Cir. 2020), which must be "intended to injure in some way unjustifiable by any government interest . . ."   *Lewis* at 849.   The Third Circuit has held that "the appropriate test for assessing liability in the context of involuntary commitment decisions is the 'shocks the conscience' standard announced in *County of Sacramento*[.]"   *Obado v. UMDNJ, Behavioral Health Center,* 524

---

subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

8

F.App'x 812, 815 (3d Cir. 2013) (citing *Benn v. Universal Health System, Inc.*, 371 F.3d 165 (3d Cir. 2004)).

In addition, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199-200 (1989). In *Youngberg v. Romeo*, 457 U.S. 307 (1982), an involuntarily committed developmentally disabled person brought an action, not challenging his commitment, but arguing that the conditions of his confinement infringed his constitutionally protected liberty interest in safety, freedom of movement, and training. The Supreme Court held that involuntary commitment proceedings do not extinguish a person's constitutionally protected liberty interest in safe conditions, freedom from unnecessary bodily restraint, and minimally adequate "training as an appropriate professional would consider reasonable to ensure his safety and to facilitate his ability to function free from bodily restraints." *Id.* at 324; *see also Clark v. Cohen*, 794 F.2d 79, 87 (3d Cir. 1986) ("*Romeo* requires that restraints be imposed only to the extent required by the judgment of professionals in charge of the involuntarily committed, and that the involuntarily committed receive minimally adequate training.") The *Youngberg* Court emphasized that, "[b]ecause the facts in cases of confinement of mentally [ill] patients vary widely, it is essential to focus on the facts and circumstances of the case before a court." *Id.* at 319 n.25. The Court observed that, because these liberty interests are not absolute, "[t]he question then is not simply whether a liberty interest has been infringed but whether the extent or nature of the restraint or lack of absolute safety is such as to violate due process." *Id.* at 320. In determining whether these liberty interests have been violated, a court must balance the liberty of the individual and the legitimate interests of the State. *Id.* at 321. The Court held that "the Constitution only requires that the courts make certain that professional judgment

9

was in fact exercised.   It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Youngberg,* 457 U.S. at 321.  (citation and internal quotation marks omitted).   Under this professional judgment standard, a decision,

> if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

*Youngberg,* 457 U.S. at 324 (footnotes omitted).[7]

Liberty interests may also arise under state law.  *See Hewitt v. Helms,* 459 U.S. 460, 466 (1983).  New Jersey law provides that "[e]very individual who is mentally ill shall be entitled to fundamental civil rights and to medical care and other professional services in accordance with accepted standards[.]"  N.J. STAT. ANN. § 30:4-24.1; *see Scott v. Plante,* 691 F.2d 634, 638 (3d Cir. 1982); *Brandt v. Acuff,* Civ. No. 11-3557 (FLW), 2012 WL 665625 *7 (D.N.J. Feb. 29, 2012).   New Jersey law further provides that "[e]ach patient receiving treatment" has the right "[t]o the least restrictive conditions necessary to achieve the purposes of treatment."  N.J. STAT. ANN. § 30:4-24.2(e)(2); *see Brandt* at *7.

In addition to a substantive component, the Due Process Clause also has a procedural component.  "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide due process of law."  *Hill v. Borough of Kutztown,* 455 F.3d 225, 233-34 (3d Cir. 2006); *see also Santos v. Secretary of D.H.S.,* 532 F.App'x 29, 33 (3d Cir. 2013).   Due process

---

[7] The *Youngberg* Court defined a professional as "a person competent, whether by education, training or experience, to make the particular decision at issue," and reasoned that "[l]ong-term treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the [mentally ill]." *Youngberg*, 457 U.S. at 323.

10

requires periodic reviews of a person's continuing need for institutionalization.  *See O'Connor v. Donaldson,* 422 U.S. 563, 574-75 (1975) ("Nor is it enough that Donaldson's original confinement was founded upon a constitutionally adequate basis, if in fact it was, because even if his involuntary confinement was initially permissible, it could not constitutionally continue after that basis no longer existed."); *Clark v. Cohen,* 794 F.2d 79, 86 (3d Cir. 1986) ("[D]ue process required periodic reviews of her continuing need for institutionalization.   Periodic reviews are required because if the basis for a commitment ceases to exist, continued confinement violates the substantive liberty interest in freedom from unnecessary restraint.") (citation omitted).   Accordingly, New Jersey law requires an order authorizing involuntary commitment to provide for review hearings at least once every 12 months; at each hearing, the state has the burden to prove by clear and convincing evidence that the person, on the date of the hearing, is mentally ill, that mental illness causes the patient to be dangerous to self or dangerous to others or property, [8] that the patient is unwilling to be admitted to a facility for voluntary care or accept appropriate treatment voluntarily, and that the patient needs inpatient care because other less restrictive alternative services are not appropriate or available to meet the patient's mental health care needs.   *See In re Commitment of J.R.,* 390 N.J. Super. 523, 531 (App. Div. 2007); *In re Commitment of J.S.,* 2006 WL 2237677 *3 (N.J. Super. Ct., App. Div. Aug. 7, 2006); N.J. STAT. ANN. § 30:4-27.2(h), (i), (m), (r); N.J. Ct. R. 4:74-7(f)(1), (f)(2)(iv).   Moreover, a commitment review hearing may include the question of the adequacy of treatment, provided notice is given.   *See In re Commitment of K.D.,* 357 N.J. Super. 94, 98-99 (App. Div. 2003); *Matter of D.J.M.,* 158 N.J. Super. 497 (App. Div. 1978).

---

[8] "'Dangerous to others or property' means that by reason of mental illness there is a substantial likelihood that the person will inflict serious bodily harm upon another person or cause serious property damage within the reasonably foreseeable future.   This determination shall take into account a person's history, recent behavior and any recent act or threat."   N.J. STAT. ANN. § 30:4-27.2(i).

(1) Count One – Commitment Without Procedural Due Process

As explained above, in Count One, Wood claims that the state court orders suspending and reinstating his *Krol* commitment upon the expiration of his criminal terms of incarceration violated due process. Wood does not articulate what procedures he believes due process required prior to re-committing him. It is undisputed that he received *Krol* hearings before each term of incarceration expired, and that the Appellate Division upheld the reinstatement of Wood's *Krol* hearings and rejected his due process challenge to his commitment upon the expiration of his terms of imprisonment. It is also undisputed that the court found in *Wood v. Main* that Wood was not entitled to relief under 28 U.S.C. § 2254 because the Appellate Division adjudicated his due process claims on the merits and that adjudication was not an unreasonable application of Supreme Court jurisprudence under § 2254(d)(1). *See Wood*, 789 F.Supp.2d at 527. Finally, there is no dispute that the Third Circuit denied Wood's request for a certificate of appealability challenging the court's dismissal of his § 2254 petition.

The doctrine of claim preclusion "bars 'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits.'" *United States v. Tohono O'Odham Nation,* 131 S.Ct. 1723, 1730 (2011) (quoting *Commissioner v. Sunnen,* 333 U.S. 591, 597 (1948)); *accord Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010). Claim preclusion is properly applied where there has been: "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same causes of action." *Sheridan v. NGK Metals Corp*., 609 F.3d 239, 260 (3d Cir. 2010).

In this case, the "same cause of action" and "final judgment on the merits" components are satisfied, as Wood unsuccessfully raised his current procedural due process claims in his previous § 2254 action, which the court dismissed on the merits and for which the Third Circuit denied a

12

certificate of appealability.   The "same parties or their privies" element is also satisfied here.   Wood brought his § 2254 action against John Main, the Chief Executive Officer at Ann Klein Forensic Center, and in the § 1983 action presently before this Court, Wood names John Main, as well as 16 other officials at Ann Klein Forensic Center, including psychiatrists, program coordinators, psychologists, social workers, and nurses.   This Court finds that, although not every defendant named in the present action was also named in Wood's habeas case, the defendants' alignment of interests satisfies the privity requirement and precludes Wood's current procedural due process claim challenging the procedures used to re-commit him after his criminal sentences expired.   This Court will, accordingly, dismiss this claim with prejudice under the doctrine of claim preclusion.

Alternatively, even if this Court were to find that Wood's due process rights were violated by use of the preponderance of the evidence standard to commit him at the expiration of his incarceration, rather than the clear and convincing evidence standard, the most that this Court could order as relief would be a new civil commitment hearing utilizing the clear and convincing evidence standard.   *See Wilkinson v. Dotson,* 544 U.S. 74, 82 (2005) (holding that plaintiff's claims challenging the procedures used to deny parole eligibility and suitability were cognizable under 42 U.S.C. § 1983 because success in such an action "means at most a new parole hearing" at which Ohio parole authorities use the proper procedures and may, in their discretion, decline to shorten plaintiff's prison term); *Aruanno v. Hayman,* 384 F.App'x 144, 146 (3d Cir. 2010) (noting that Aruanno's challenge to the procedures used to civilly commit him was cognizable under § 1983 because "success on his due process claims would entitle Aruanno only to a new civil commitment hearing.").   Because Wood received a civil commitment hearing, which utilized the clear and convincing evidence standard, in 2010 when his 30-year *Krol* status expired, there is no relief this Court could provide under § 1983 for his allegedly wrongful commitment.

13

(2) Counts Two and Three - Inadequate Treatment

In Counts Two and Three, Wood raises substantive due process claims, namely, that defendants failed to provide adequate mental health treatment in the least restrictive setting. Specifically, in Count Two, Wood claims that "defendants . . . denied plaintiff the ability to access adequate treatment programs or any form of treatment, and deliberately and willfully den[ied] him adequate treatment which resulted in a form of punishment rather than adequate treatment . . . in violation of the Due Process Clause of the Fourteenth Amendment." *Id.* at 21. To support Count Two, Wood alleges:

> Since plaintiff has been confined at AKFC he has consistently argued with the treatment team that he does not need treatment and if he does he is not receiving any. However, all of the above defendants because of his complaints and grievances treat him with contempt . . . . Rather than treating plaintiff for any condition that they claim plaintiff needs to be confined at AKFC for, they arbitrarily keep him confined as a prison[er] without offering any adequate treatment to help plaintiff be discharged.
>             *                  *                  *
> Plaintiff did not have any adequate contact with the psychiatrist or treatment team. Plaintiff would see the treatment team once a month, for the monthly review of his progress; however, there was no actual treatment to review or assess because plaintiff did not have any adequate treatment programs in order for the treatment team to monitor or review his prognosis because he was not receiving any.

(Complaint, ECF 1 at 17-19) (paragraph numbers omitted).

In Count Three, Wood claims that defendants violated his liberty interest, created by N.J. STAT. ANN. § 30:4-24.2(e)(2) and (d)(3), to the "'least restrictive setting' by not providing plaintiff with any treatment programs; or providing a way so that plaintiff could have access to adequate assigned treatment programs, and by having him isolated, secluded, and confined at AKFC." (Complaint, Count Three, ECF No. 1 at 21.) As factual support, Wood asserts that defendants "have violated plaintiff's right to the 'least restrictive setting' by implementing, promulgating, creating, or possess[ing] responsibility for the continued operation of a policy that prohibited

14

plaintiff from having access to adequate treatment programs in contravention of the Due Process Clause of the Fourteenth Amendment." *Id.* at 21-22.   He also alleges that his placement on an unspecified date on "seclusion status . . . without the doctors or treatment team assessing the need for seclusion within one hour" violated his due process rights.  *Id.* at 22.

The problem with Counts Two and Three in the Complaint is that Wood does not assert facts connecting any Defendant to the alleged denial of adequate treatment in the least restrictive setting.   Assuming that Wood has a constitutionally protected right to some minimum level of mental health treatment, this Court finds that the Complaint, as written, does not adequately provide any facts showing that any Defendant was personally involved in violating his due process rights.  *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs").   Indeed, Wood sues 17 persons who are employed at Ann Klein Forensic Center.   Those Defendants include chief executive officer John Main; assistant chief executive officer Glen Figuerson; chief psychiatrist Elizabeth Hogan; psychiatrists Darius Chacinski, Douglas Smith, Robert Roth; psychologist Riccardo Grippaldi; program coordinators Jenna Caccese, Edward McGowan, and Reed Glady; social workers Patricia Fleming, Maria Deduro, Nydia Santos, Patricia Foundos, and Gwendolyn Johnson; and nurses Justyna Obersmidt and Karen Ramczak.   However, aside from identifying these Defendants, Plaintiff's allegations do not

set forth any facts showing how each Defendant was personally involved in violating his rights. Without those connections, Plaintiff's allegations cannot meet the Rule 8 pleading requirements, and therefore, counts two and three fail to state a claim against any named defendant.

B.      Amendment

A District Court generally grants leave to correct the deficiencies in a complaint by amendment.   *See DelRio-Mocci v. Connolly Properties Inc*., 672 F.3d 241, 251 (3d Cir. 2012); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).   This Court observes that Wood has written over 20 letters during the pendency of this proceeding; these letters show that he is articulate and intelligent. In light of his letters and Wood's numerous prior proceedings, there is no basis for this Court to find that Wood is incapable of setting forth factual allegations showing the way in which each named Defendant violated his constitutional rights.   Thus, the Court will grant Wood 45 days to file an amended complaint which corrects the pleading deficiencies in the Complaint by asserting allegations showing that each named defendant was personally involved in violating his right to minimally adequate treatment under the professional judgment standard.[9]   Bear in mind, if Plaintiff elects to file an amended complaint, he is free to attach reports or transcripts to support his claims that the named defendants are failing to exercise professional judgment or refusing to provide needed treatment, contrary to the professional judgment standard.

---

[9]  Although Wood has been confined in mental hospitals for almost 30 years, this Court notes that "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment."   *Kansas v. Hendricks,* 521 U.S. 346, 363 (1997) (quoting *United States v. Salerno,* 481 U.S. 739, 746 (1987)).   The *Hendricks* Court rejected the notion that confinement for a potentially indefinite duration evidenced a state's punitive intent.   "Far from any punitive objective, the confinement's duration is instead linked to the stated purposes of the commitment, namely, to hold the person until his mental abnormality no longer causes him to be a threat to others."   *Hendricks* at 363.   Moreover, the Supreme Court "ha[s] never held that the Constitution prevents a State from civilly detaining those for whom no treatment is available, but who nevertheless pose a danger to others . . . .   [I]t would be of little value to require treatment as a precondition for civil confinement of the dangerously insane when no acceptable treatment existed.   To conclude otherwise would obligate a State to release certain confined individuals who were both mentally ill and dangerous simply because they could not be successfully treated for their afflictions."   *Id*. at 366.

16

### III.   CONCLUSION

For the reasons set forth in this Opinion, this Court grants the application to proceed *in forma pauperis* and dismisses the Complaint.


_____/s/ Freda L. Wolfson_____

**FREDA L. WOLFSON, U.S.D.J.**

DATED:   _May 6_, 2014

17