UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILLIP WOOD, | Civil Action No. 13-2453 (FLW) |
| Plaintiff, | |
| v. | OPINION |
| THE STATE OF NEW JERSEY, et al., | |
| Defendants. | |

**WOLFSON, United States District Judge:**

### I. INTRODUCTION

This matter has been opened to the Court by a motion to dismiss brought pursuant to Rule 12(b)(6) and (1), by Defendants State of New Jersey, Ann Klein Forensic Center ("AKFC"), Elizabeth Hogan, Darius Chacinski, Jenna Caccese, Riccardo Grippaldo, Patricia Fleming, Justyna Obersmidt, Karen Ramczak, Maria Deduro, Robert Roth, Edward McGowen, Nydia Santos, Douglas Smith, Reed Glady, Patricia Foundos, John Main, and Glen Ferguson. The Plaintiff in this action has been involuntarily committed for the last 35 years, and is currently confined at AKFC. The claims in Plaintiff's Second Amended Complaint relate to alleged inadequacies in medical treatment provided by Defendants. For the reasons explained in this Opinion, Defendants' motion to dismiss is granted in part and denied in part.

### II. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### a. Factual Background

The individual Defendants are state officials who work at AKFC. The Second Amended Complaint alleges that during his confinement at AKFC, Plaintiff has been assigned to the treatment teams of Units 2, 5, 7, and 8. The Second Amended Complaint then recites the members of each treatment team. (*Id.* at ¶¶ 27-29.) The treatment team of Unit 2 consists of

1

Defendants Roth, Santos, and McGowen; the treatment team of Unit 5 consists of Defendants Chacinski, Grippaldi, Fleming; Caccese, Obersmidt, and Ramczak; the treatment team of Unit 7 consists of Defendants Smith, Marty, McGowen, and Johnson; the treatment team for Unit 8 consists of Defendant Glady, and Foundos.  (Second Am. Compl. at ¶¶ 27-29.)

The Complaint then alleges that Plaintiff "did not have any adequate contact with any treatment team with regard to his treatment program.  Plaintiff would see his treatment team once a month for his monthly progress review[;] however, there was nothing to review because he was not receiving any treatment." (*Id.* at ¶ 30 (emphasis added).)  Plaintiff's Second Amended Complaint further contends that since he had been confined at AKFC, "he has consistently informed each treatment team that he does not need treatment and that if he does need treatment, he is not receiving adequate treatment that he needs to help himself get better and be discharged." (*Id.* at ¶ 31.)  The Second Amended Complaint alleges that "[e]ach complaint Plaintiff made to each treatment team member was ignored or denied. (*Id.* at ¶ 33.)  It further alleges that he has specifically made "many complaints" about the inadequacy of his treatment to Defendant Roth, who is his treating psychiatrist. (*Id.* at ¶ 32.)  The Second Amended Complaint likewise alleges that he made numerous complaints about the inadequacy of the treatment he was receiving at AKFC to Defendant Hogan, the chief psychologist at AKFC, and alleges that Hogan ignored or denied each of his complaints. (*Id.* at ¶¶ 34-35.)  Plaintiff's Second Amended Complaint also contends that "[e]ach time Plaintiff filed a grievance or complaint to each of the treatment teams, they placed Plaintiff on 'seclusion status' for being upset about the conditions of his confinement and the inadequacy of the treatment being provided."[1]  (*Id.* at ¶ 36.)

---

[1] Each time Plaintiff was placed on "seclusion status" for complaining about his confinement and the inadequacy of his treatment, he would not be assessed by a doctor within the one-hour requirement set forth in N.J.S.A. § 30:4-24.2(d)(3).

b. **Procedural History**

The Court recounts only the procedural history that is relevant to the instant motion. Plaintiff's original Complaint was docketed on April 17, 2013. (ECF No. 1.) Plaintiff's application to proceed *in forma pauperis* ("IFP") was docketed on January 27, 2014. (ECF No. 16.) On May 6, 2013, the Court granted Plaintiff's IFP application and dismissed the Complaint at screening pursuant to 28 U.S.C. 1915(e)(2)(B). (ECF Nos. ¶¶ 23-24.) Plaintiff's claims relating to inadequate medical treatment by the individual Defendants were dismissed without prejudice because the allegations in the Complaint did not provide facts connecting any of the 17 Defendants to the allegedly inadequate treatment. (ECF No. 23, Op. at 14-16.) Plaintiff subsequently submitted an Amended Complaint, which was docketed on June 6, 2014. (ECF No. 29.) He also submitted several applications and letters requesting pro bono counsel. On March 3, 2015, the Magistrate Judge entered an Order, which stated as follows:

> On October 15, 2014, the Court denied your most recent request for the appointment of pro bono counsel. (See Letter Order of 10/15/2014; Docket Entry No. 38). In doing so, the Court informed you that if you provided a doctor's note and/or medical records to support your claim of mental illness, as previously directed, the Court would reconsider your application for the appointment of counsel. (*Id.* at 1). Indeed, the Court indicated that such proof was necessary for it to properly evaluate your request that pro bono counsel be appointed. (*Id.*)
>
> Since the entry of that Order, the Court has received your renewed Application for Pro Bono Counsel (Docket Entry No. 41) with a letter from Richard Higgins. In his letter, Mr. Higgins confirms that you have been diagnosed as suffering from Schizoaffective Disorder as well as Antisocial Personality Disorder and have been continuously receiving treatment at Ann Klein Forensic Center, a maximum security psychiatric hospital, since May 30, 2013. Mr. Higgins goes on to explain that you will remain at this facility until the treatment team determines that your mental health has stabilized.

> In light of the information provided by Mr. Higgins, the Court finds that the appointment of counsel is warranted under *Tabron v. Grace*, 6F.3d 147, 153-54 (3d Cir. 1993). . . .

(ECF No. 50.) On April 1, 2015, the law firm of Drinker Biddle & Reath, LLC was appointed to represent Plaintiff. (ECF No. 53.) On June 11, 2015, counsel for Plaintiff moved for leave to file a Second Amended Complaint (ECF No. 58), and on September 9, 2015, the Magistrate Judge granted that motion. (ECF No. 64.) Counsel for Plaintiff filed the Second Amended Complaint on November 19, 2015. (ECF No. 69.)

Summons issued, and all Defendants except Gwendolyn Johnson accepted service of the Second Amended Complaint.[2] The served Defendants moved to dismiss the Complaint on January 13, 2016. (ECF No. 81.) Counsel for Plaintiff filed his opposition brief on February 2, 2016, and Defendants filed their reply brief on February 9, 2016. (ECF Nos. ¶¶ 82-83.) The matter is now fully briefed and ready for disposition.

### III.     STANDARD OF REVIEW

The Federal Rules of Civil Procedure require "only a short and plain statement of the claim that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8, and a complaint satisfies this requirement by alleging "enough facts to state a claim for relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a motion to dismiss pursuant to Rule 12(b)(6), the facts alleged on the face of a complaint "must be taken as true and . . . may not be dismissed merely because it appears unlikely that the plaintiff can prove those

---

[2] It is not clear whether Defendant Johnson has been served with the Complaint, and she has not requested or been granted representation by New Jersey's Attorney General's Office. (ECF No. 18-1, Moving Br. at 5, fn 1). As such, the State has not moved to dismiss the Complaint on her behalf.

facts or will ultimately prevail on the merits." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 553-54, 563 n.8).

Courts employ a "two-pronged approach" in evaluating motions to dismiss. *Ashcroft v. Iqbal* , 556 U.S. 662, 679 (2009).  First, factual allegations are accepted as true, while any legal conclusions may be disregarded. *Id.* at 1949. Second, the court must determine whether the factual allegations sufficiently illustrate a "plausible claim for relief." *Id.* at 678. This "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The plausibility standard "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[ ]" of the particular allegation. *Phillips v. County of Allegheny*, 515 F.3d at 234 (quotations omitted).

Defendants have also raised sovereign immunity as a defense. Rule 12(b)(1) allows the court to dismiss a suit for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). This type of motion permits a party to raise the issue of Eleventh Amendment immunity at the earliest stage of litigation. In *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690 (3d Cir. 1996), the Third Circuit Court of Appeals noted that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Id.* at 694 n. 2 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)). The *Blanciak* court added that Rule

12(b)(1) was the proper means of raising the issue of whether the Eleventh Amendment bars federal jurisdiction.  *Id.*

### IV. <u>ANALYSIS</u>

#### a. Claims Against the State of New Jersey, AKFC and the Official Capacity Claims for Damages Against the Individual Defendants

Defendants argue that Plaintiff's claims must be dismissed as to the State of New Jersey and AKFC because these Defendants are entitled to sovereign immunity under the Eleventh Amendment.  The Court agrees and will dismiss the claims against these Defendants.

States may only be sued when they have waived their sovereign immunity, or when Congress has authorized a specific type of suit for the purpose of enforcing the Fourteenth Amendment.  *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).  Sovereign immunity extends to institutions that are arms of the state. *Alden v. Maine*, 527 U.S. 706, 740 (1999). State officials are also protected by sovereign immunity when they are sued in their official capacities for damages. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

AKFC is a state hospital, created by statute. *See* N.J. Stat. Ann. § 30:1-7. This institution have previously been accorded sovereign immunity as an arm of the state.  *Hobson v. Tremmel*, No. 11-4590, 2013 WL 3930132, at *4 (D.N.J. July 30, 2013).  It is appropriate to view AKFC as an arm of the state because it is created by the state, the state controls and funds it, it has no authorization to sue or be sued in its own right, and any judgment against it would be taken out of the state treasury. *See Brown ex rel. Payton*, Civil No. 11–7159 (RMB/KMW), 2012 WL 4857570, at *1 (D.N.J. Oct. 11, 2012) (addressing Ancora Psychiatric Hospital).  Therefore, this Court finds that the State of New Jersey and AKFC are protected by sovereign immunity, and

must be dismissed from this suit. To the extent Plaintiff seeks damages from the individual Defendants in their official capacities, those claims are likewise dismissed.[3]

### b. Inadequate Medical Care Claims

The Moving Defendants have also moved to dismiss the claims against the remaining individual Defendants on the basis that the Complaint fails to state cognizable claims for inadequate medical treatment. (ECF No. 81-1, Mov. Br. at 7-10.)

The Fourteenth Amendment protects an involuntarily committed patient's right to adequate medical care. *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982). In *Youngberg*, the Supreme Court expressly rejected the application of the Eighth Amendment's "deliberate indifference" standard to claims by civilly committed patients under the Fourteenth Amendment. *Id.* at 325. Instead, the Court adopted the "professional judgment standard," which provides that an official is liable only if a "decision ... is ... a substantial departure from accepted professional judgment, practice, or standards."[4] *Id.* at 323. Specifically, the Court considered an

---

[3] The individual Defendants are state officials who work at AKFC. The Complaint specifies that Defendants are being sued in their official and individual/personal capacities, and Plaintiffs seeks declaratory relief as well as compensatory and punitive damages. (ECF Nos. ¶¶ 1, A-B.) A plaintiff may sue state officials in their official capacities if the plaintiff is seeking prospective relief, such as an injunction. *See Ex parte Young*, 209 U.S. 123, 155-56 (1908). Additionally, a plaintiff may sue state officials in their personal capacities for prospective relief and for damages. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). As such, the Court will dismiss only the official capacity claims for damages with respect to the individual Defendants.

[4] The Third Circuit has recognized that *Youngberg* "unambiguous[ly] reject [ed] ... the deliberate indifference standard." *Shaw v. Strackhouse*, 920 F.2d 1135, 1145 (3d Cir. 1990); *see also Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987) (examining a failure to provide medical care claim and stating that "[t]o apply the Eighth Amendment standard to mentally retarded persons would be little short of barbarous"). The Third Circuit has also found that the professional judgment standard is not equivalent to negligence. *Shaw*, 920 F.2d at 1146–47 (citing *Daniels v. Williams*, 474 U.S. 327 (1986), for the proposition that the professional judgment standard requires a plaintiff to prove more than simple negligence). According to the Third Circuit, "[p]rofessional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct." *Id.* at 1146.

involuntarily committed patient's right to safety and freedom from restraint. *See id.* at 321. "Although the *Youngberg* decision did not address failure to provide medical care specifically, the Court described adequate medical care as one of 'the essentials of the care that the State must provide.' *Mullen v. Dep't of Human Servs.*, No. CV130296RBKJS, 2016 WL 356030, at *2 (D.N.J. Jan. 27, 2016) (citing *id.* at 324). "In addition to medical care, under *Youngberg*, involuntary committed persons retain substantive liberty interests in adequate food, shelter and clothing, *see* 457 U.S. at 315, as well as safety, freedom of movement, minimally adequate or reasonable training to ensure safety and freedom from undue restraint. *Mullen*, 2016 WL 356030, at *3 (citing *Youngberg*, 457 U.S. at 317-19).

The only issue before the Court is whether the factual allegations in the Second Amended Complaint are sufficient to suggest that each of the individual Defendants' treatment of Plaintiff constitutes a substantial departure from accepted professional judgment, practice, or standards. With respect to the members of the treatment teams, who are clearly identified in the Second Amended Complaint, the Court finds that Plaintiff has alleged that each of these Defendants has failed to provide him with <u>any treatment</u> in between his monthly progress reviews, ignored and denied his requests for treatment, and improperly placed him on 'seclusion status' in response to his requests for treatment. The allegations that the Defendant members of the treatment teams failed to provide treatment, denied and disregarded treatment requests, and isolated him for extended periods of time without contact from medical professionals, set forth a plausible claim for relief that the treatment team members violated "generally accepted professional standards." Plaintiff also sufficiently alleges that he made numerous complaints regarding the inadequacy of

his treatment to Defendant Hogan, who is the chief psychiatrist at AKFC, and that she has repeatedly denied and ignored his complaints.

Although Defendants contend that more factual detail about the role of each Defendant in the alleged violations is required to state a claim for relief, detailed factual pleadings are not required under Rule 8, and Plaintiff has persuasively argued that his access to critical information to support his claims has been limited by his status as an involuntarily committed patient in a secure psychiatric hospital.  (ECF No. 82, Opp. Br. 4.)  As explained by Plaintiff:

> Defendants exclusively possess all of the information pertaining to Plaintiff s treatment history, including:  the rationale for Plaintiff s medication regimen; explanations for ignoring Plaintiff s treatment inquiries; and the motivation for deliberately isolating and restraining Plaintiff via "seclusion status."  As such, Plaintiff in the instant matter should be permitted to seek discovery pertaining to, among other things, his own course of treatment, his medical history, and any applicable policies at the AKFC pertaining to the seclusion and isolation of patients.

(*Id.* at 5.)  Because Plaintiff's treatment history is presently possessed and controlled by Defendants, Plaintiff cannot be expected to provide detailed factual allegations at this early stage of the proceedings.[5]  As such, the Court will order Defendants to provide Plaintiff's counsel with Plaintiff's treatment history within 30 days.  Within 60 days of his receipt of his treatment

---

[5] Here the Court finds that Plaintiff has provided sufficient facts in his Second Amended Complaint to connect the Defendant members of the treatment team and Defendant Hogan to the misconduct alleged.  Notably, however, the Third Circuit has also recognized that pleading facts upon information and belief is permitted where the factual information at issue is within the Defendants' exclusive possession and control.  *See, e.g., McDermott v. Clondalkin Grp.*, Inc., No. 15-2782, 2016 WL 2893844, at *4 (3d Cir. May 18, 2016) (explaining that "pleading upon information and belief is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'—so long as there are no "boilerplate and conclusory allegations " and "[p]laintiffs ... accompany their legal theory with factual allegations that make their theoretically viable claim plausible")(citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)).

history, Plaintiff may file an Third Amended Complaint to clarify his claims against each Defendant.

The Court, however, will dismiss without prejudice the claims against Defendants John Main and Glen Figuerson for failure to plead facts suggesting that they were personally involved in the failures to treat Plaintiff. The claims against the two Defendants appear to be grounded solely in *respondeat superior*, and based on the their respective positions as Chief Executive Officer and Assistant Chief Executive Officer at AKFC. "To establish liability under § 1983, each individual defendant 'must have personal involvement in the alleged wrongdoing.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Respondeat superior is not a basis for section 1983 liability. *See Rode*, 845 F.2d at 1207 (3d Cir. 1998) (explaining that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.")

## V.     CONCLUSION

For the reasons expressed in this Opinion, Defendants' motion to dismiss is granted in part and denied in part. The claims against the State of New Jersey and AKFC are dismissed with prejudice. The official capacity claims for damages are dismissed with prejudice against all individual Moving Defendants. The claims against Defendants Main and Figuerson are dismissed without prejudice. The motion to dismiss is otherwise denied without prejudice at this time. An appropriate Order follows.

s/Freda L. Wolfson<br>
Freda L. Wolfson, U.S.D.J.

Date: August 30, 2016